### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| GLENN MARTIN, Individually and For Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Civil Action No. 1:23-cv-12354-WGY |
| COMPASS GROUP USA, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

### PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF
### SETTLEMENT, ATTORNEYS' FEES, AND COSTS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii
TABLE OF  AUTHORITIES ........................................................................................................iii
INTRODUCTION ...........................................................................................................................1
FACTUAL AND PROCEDURAL BACKGROUND ......................................................................1
    I.     Factual Allegations...........................................................................................................1
    II.    Overview of Investigation, Litigation, and Settlement Negotiations. ...............................2
SUMMARY OF THE SETTLEMENT TERMS.............................................................................3
    I.     Settlement Amount...........................................................................................................3
    II.    Payments to Plaintiffs......................................................................................................3
    III.   Payment Procedure...........................................................................................................4
    IV.   Release. ............................................................................................................................4
    V.    Allocation Formula..........................................................................................................5
    VI.   Service Award...................................................................................................................5
    VII.  Attorneys' Fees and Litigation Costs .............................................................................5
ARGUMENT..................................................................................................................................6
    I.     A One-Step Approval Process Is Standard for FLSA Settlements. ..................................6
    II.    The "Cash the Check" Settlement Opt-in Procedure is Common Practice. ......................7
    III.   The Settlement is Fair and Reasonable and Should Be Approved...................................11
    IV.   Notice with Settlement Checks Increases the Fairness of the Settlement. .....................14
    V.    The Service Award to Plaintiff Should Be Approved as Fair and Reasonable. ..............14
    VI.   Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.......................16
    A.    The Court Should Apply the Percentage of the Fund Method. .......................................16
    B.    Attorneys' Fees are Reasonable in Light of the Settlement.............................................17
    C.    Attorney Fees Amounting to 33% of the Gross Settlement Amount is Reasonable.....18
CONCLUSION...............................................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Aguirre v. DirecTV, LLC,*
2017 WL 6888493 (C.D. Cal. Oct. 6, 2017) ................................................................8
*Aros v. United Rentals, Inc.,*
2012 WL 3060470 (D. Conn. July 26, 2012) ...............................................................6
*Bacchi v. Massachusetts Mut. Life Ins. Co.,*
2017 WL 5177610 (D. Mass. Nov. 8, 2017) ..............................................................19
*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................................7
*Besic v. Byline Bank, Inc.,*
2015 WL 13763028 (N.D. Ill. Oct. 26, 2015) .....................................................10, 14
*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ....................................................................................................16
*Bozak v. Fedex Ground Package Sys., Inc.,*
2014 WL 3778211 (D. Conn. July 31, 2014) .......................................................6, 14
*Brotherton v. Cleveland,*
141 F. Supp. 2d 907 (S.D. Ohio 2001) .......................................................................18
*Bussie v. Allamerica Fin. Corp.,*
1999 WL 342042 (D. Mass. May 19, 1999) ...............................................................15
*Caballero v. Zaloumis Contracting Serv., Inc.,*
2013 WL 646656 (S.D.N.Y. Feb. 20, 2013) ...............................................................10
*Cameron-Grant v. Maxim Healthcare Servs., Inc.,*
347 F.3d 1240 (11th Cir. 2003) ....................................................................................7
*Campbell v. Advantage Sales & Mktg. LLC,*
2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ..............................................................6
*Cerrato v. Durham Pub. Sch. Bd. of Educ.,*
2017 WL 2983301 (M.D.N.C. Mar. 17, 2017) ............................................................8
*Cunha v. Avis Budget Car Rental, LLC,*
2016 WL 6304432 (D. Mass. Oct. 26, 2016) ...............................................................6
*Curtis v. Scholarship Storage Inc.,*
2016 WL 3072247 (D. Me. May 31, 2016) ................................................................11
*DeLeon v. Wells Fargo Bank, N.A.,*
2015 WL 2255394 (S.D.N.Y. May 7, 2015) ..............................................................15
*Dent v. ITC Serv. Grp., Inc.,*
2013 WL 5437331 (D. Nev. Sept. 27, 2013) .............................................................15
*Devine v. City of Hampton, Virginia,*
2015 WL 10793424 (E.D. Va. Dec. 1, 2015) .............................................................20
*Dixon v. Zabka,*
2013 WL 2391473 (D. Conn. May 23, 2013) ...............................................................6
*Durrett v. Hous. Auth. of City of Providence,*
896 F.2d 600 (1st Cir. 1990) ......................................................................................11
*Edelen v. Am. Residential Servs.,*
2013 WL 3816986 (D. Md. July 22, 2013) ..................................................................9

*Franco v. Ruiz Food Prods.,*
    2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................................................................. 10

*Gagliastre v. Capt. George's Seafood Rest., LP,*
    2019 WL 2288441 (E.D. Va. May 29, 2019) .................................................................. 20

*Genesis Healthcare Corp. v. Symczyk,*
    133 S. Ct. 1523 (2013) ...................................................................................................... 7

*Girault v. Supersol 661 Amsterdam, LLC,*
    2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012) ................................................................... 10

*Henry v. Little Mint, Inc.,*
    2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................................................ 12

*Hooker v. Sirius XM Radio, Inc.,*
    2017 WL 4484258 (E.D. Va. May 11, 2017) ................................................................. 20

*In re Bayou Sorrell Class Action,*
    2006 WL 3230771 (W.D. La. Oct. 31, 2006) ................................................................ 19

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.,*
    2014 WL 4446464 (D. Mass. Sept. 8, 2014) ................................................................. 15

*In re Domestic Air Transp. Antitrust Litig.,*
    148 F.R.D. 297 (N.D. Ga. 1993) ................................................................................... 13

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ............................................................................................ 19

*In re Neurontin Mktg & Sales Practice Litig.,*
    2014 WL 5810625 (D. Mass. Nov.10, 2014) ................................................................ 19

*In re Newbridge Networks Sec. Litig.,*
    1998 WL 765724 (D.D.C. Oct. 23, 1998) .................................................................... 13

*In re Ravisent Techs., Inc. Sec. Litig.,*
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ................................................................. 13

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52 (D. Mass. 2005) ..................................................................................... 17

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,*
    56 F.3d 295 (1st Cir. 1995) ...................................................................................... 16, 17

*In re TJX Companies Retail Sec. Breach Litig.,*
    584 F. Supp. 2d 395 (D. Mass. 2008) ...................................................................... 17, 18

*In re Xcel Energy, Inc., Securities Litigation,*
    364 F.Supp.2d 980 (D.Minn.2005) .............................................................................. 19

*Johnson v. Brennan,*
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .............................................................. 10

*Johnson v. VCG Holding Corp.,*
    802 F. Supp. 2d 227 (D. Me. 2011) ................................................................................ 7

*Kirkpatrick v. Cardinal Innovations Healthcare,*
    352 F. Supp. 3d 499 (M.D.N.C. 2018) ......................................................................... 20

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.,*
    2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ................................................................. 6

*Lapan v. Dick's Sporting Goods, Inc.,*
    2015 WL 8664204 (D. Mass. Dec. 11, 2015) ............................................................... 12

*Lazarin v. Pro Unlimited, Inc.,*
    2013 WL 3541217 (N.D. Cal. July 11, 2013) ................................................................. 9

*Lazy Oil Co. v. Witco,*
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................................... 12

*Legros v. Mud Control Equip., Co.*,
  2017 WL 925730 (W.D. La. Mar. 6, 2017) .................................................................. 20
*Leverage v. Traeger Pellet Grills, LLC*,
  2017 WL 6405619 (N.D. Cal. Dec. 15, 2017) ................................................................8
*Lizondro-Garcia v. Kefi LLC*,
  2014 WL 4996248, n.4 (S.D.N.Y. Oct. 7, 2014) ...........................................................9
*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ................................................................................... 11
*Mazola v. May Dept Stores Co.*,
  1999 WL 1261312 (D. Mass. Jan. 27, 1999) ............................................................... 19
*Norman v. Hous. Auth. of the City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ................................................................................... 16
*O'Connor v. Oakhurst Dairy*,
  2015 WL 2452678 (D. Me. May 22, 2015) .....................................................................6
*Ortiz v. Chop't Creative Salad Co. LLC*,
  2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014) ...............................................................9
*Pike v. New Generation Donuts, LLC*,
  2016 WL 707361 (D. Mass. Feb. 20, 2016) ...................................................................6
*Powell v. Lakeside Behavioral Healthcare, Inc.*,
  2011 WL 5855516 (M.D. Fla. Nov. 22, 2011) ..............................................................6
*Prena v. BMO Fin. Corp.*,
  2015 WL 2344949 (N.D. Ill. May 15, 2015) .................................................................6
*Raymer v. Mollenhauer*,
  2011 WL 338825 (N.D. Ind. Jan. 31, 2011) .................................................................6
*Roberts v. Apple Sauce, Inc.*,
  2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) .............................................................6
*Roberts v. TJX Companies, Inc.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................................ 17, 18
*Sarkisov v. StoneMor Partners L.P.*,
  2015 WL 5769621 (N.D. Cal. Sept. 30, 2015) .............................................................9
*Scovil v. FedEx Ground Package Sys., Inc.*,
  2014 WL 1057079 (D. Me. Mar. 14, 2014) .................................................. 11, 14, 15, 19
*Seghroughni v. Advantus Rest., Inc.*,
  2015 WL 390329 ............................................................................................................9
*Shaw v. Toshiba America Information Systems, Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) .......................................................................... 13
*Singleton v. AT&T Mobility Servs., LLC*,
  146 F. Supp. 3d 258 (S.D.N.Y. 2015) ......................................................................... 11
*United States v. Cannons Eng'g Corp.*,
  899 F.2d 79 (1st Cir. 1990) ......................................................................................... 11
*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir. 2001) ....................................................................................... 19
*Velez v. Majik Cleaning Serv., Inc.*,
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................................................. 14
*Winingear v. City of Norfolk, Va*,
  2014 WL 3500996 (E.D. Va. July 14, 2014) .............................................................. 20
*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ...................................................................................... 13

*Woods v. N.Y. Life Ins. Co.*,
  686 F.2d 578 (7th Cir. 1982) ................................................................................................... 7
*Woolfson v. Caregroup, Inc.*,
  2010 WL 10063268 (D. Mass. Sept. 13, 2010) ....................................................................... 11

Statutes

29 U.S.C. § 216(b) ....................................................................................................................... 6
M.G.L. c. 136 ............................................................................................................................... 5
M.G.L. c. 149, § 1 ....................................................................................................................... 4
M.G.L. c. 151, § 1 ....................................................................................................................... 4

Rules

Federal Rule of Civil Procedure 23 ....................................................................................... 6, 7

Other Authorities

*Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts*,
  29 Berkeley J. Emp. & Lab. L. 269 (2008) ............................................................................ 14
William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) .................................... 11

## INTRODUCTION

Plaintiff Glenn Martin ("Plaintiff") and Defendant Compass Group USA, Inc. ("Defendant") (together, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit with Plaintiff and the proposed Settlement Class (collectively, the "Plaintiffs"). The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona-fide* dispute. The settlement was reached after in-depth investigation, contested pleadings, and a thorough review of documentary evidence and payroll data. The settlement was the result of arm's-length settlement negotiations between experienced counsel and is a fair and reasonable resolution to a *bona fide* dispute between the Parties regarding the Plaintiffs' classification status under the FLSA.

Under the Settlement, the Gross Settlement represents 1.57 times the total two-year back wages allegedly owed and, even after attorneys' fees and costs are considered, the Net Settlement represents approximately 80% of the two-year back wages allegedly owed. *See* Declaration of Lindsay Itkin Reimer, attached as Exhibit 1, at ¶¶ 36-40. Plaintiff respectfully asks the Court to issue an order: (1) approving the settlement set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 2; (2) approving a Service Award of $2,500 to Named Plaintiff Martin; (3) approving Plaintiff's request for attorneys' fees in the amount of $25,000 (approximately 33% of the Gross Settlement), plus an additional reimbursement of costs and expenses up to $10,000; and (4) dismissing the Lawsuit with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations.

Plaintiff and the proposed Settlement Class are former delivery drivers of Defendant. Plaintiff alleges Defendant violated the FLSA by failing to pay him and similarly situated workers overtime wages for the hours they worked in excess of 40 in a week (instead, paying them a daily rate for all

hours worked each day without regard to the number of hours worked that day or week). Doc. 1.

## II.    Overview of Investigation, Litigation, and Settlement Negotiations.

Before the initiation of this Action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel focused its investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they claimed to be entitled, and the propriety of collective action certification. Class Counsel obtained and reviewed documents from Plaintiff and other sources, including pay and time records. Class Counsel also conducted in-depth interviews with Plaintiff relating to his work with Defendant and the classification and pay practices at issue.

On October 12, 2023, Plaintiff filed this Lawsuit against Defendant in this Court on behalf of himself and others alleged to be similarly situated, alleging that Defendant violated the FLSA and Massachusetts wage and hour laws and by improperly classifying him and other employees as exempt from federal and state overtime requirements and failing to pay them overtime wages. Doc. 1. On September 11, 2024, Plaintiff filed his First Amended Complaint to narrow the allegations at issue to violations of the FLSA only. Doc. 20. The Amended Complaint seeks recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages under the FLSA. *Id.* Defendant disputes all material allegations, maintaining that Plaintiffs were appropriately classified and compensated at all times and that Plaintiff's allegations were not suitable for class or collective adjudication. Doc. 7.

In the spring of 2024, the Parties agreed to discuss a potential early resolution of this matter. In this regard, Defendant sent Class Counsel the payroll and time records for all individuals comprising the putative class. In addition, Defendant sent information relating to the Massachusetts Attorney General's investigation of Defendant's use of the applicable pay practice from July 15, 2022 to July 13, 2023, which resulted in payments to Plaintiffs for Defendant's alleged violations of Massachusetts wage laws over the relevant period.

Using the payroll and time information provided by Defendant, Class Counsel determined the two-year, unliquidated back wages owed to Plaintiffs amounted to $48,567.71. Ex. 1 at ¶ 36. Plaintiff contends an additional $48,567.71 in liquidated damages is appropriate (amounting to $97,135.43 in two-year back wages plus liquidated damages). *Id.* Following the Massachusetts Attorney General's investigation, Defendant paid Plaintiffs a total of $55,848.83 in back wages for alleged violations of Massachusetts wage and hour laws. *Id.* at ¶ 37. The amounts Defendant paid Plaintiffs because of the Massachusetts Attorney General's investigation were limited to back wages and did not include any payments for liquidated damages, other penalty damages, or interest. *Id.* at ¶ 38. All this to say, the remaining sums left at issue in this Action after offsetting payments resulting from the Massachusetts Attorney General's investigation largely concerned the payment of liquidated damages under the FLSA. *Id.* at ¶ 39.

Following months of informal discovery and discussions, the Parties reached a settlement in principle for a Gross Amount of $76,000. The Parties now jointly seek approval of their proposed settlement. The Gross Settlement represents 1.57 times the two-year, unliquidated back wages allegedly owed and, even after attorneys' fees and costs and a Service Award for the Named Plaintiff are considered, the Net Settlement represents approximately 80% of the two-year back wages owed (and approximately 94% of the total liquidated damages alleged to be owed). *Id.* at ¶¶ 36-40.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    Settlement Amount.

The Settlement Agreement establishes a Gross Settlement which consists of (1) the negotiated settlement payments for distribution to the Plaintiffs; (2) a separately negotiated award of attorneys' fees and costs; and (3) a Service Award for the Named Plaintiff of $2,500.00.

### II.   Payments to Plaintiffs.

Plaintiffs will receive their *pro rata* share of the settlement as payment for liquidated damages

3

(the damages allegedly remaining after the Massachusetts Attorney General's investigation), for which an IRS Form 1099 will be issued.

## III.    Payment Procedure.

Within fourteen (14) calendar days after the Court issues an Order approving the Settlement Agreement, Defendant shall provide to Class Counsel, in electronic format if possible, the names, last known addresses, last known telephone numbers (if any), last known email addresses (if any), and social security numbers or tax ID numbers of each Settlement Class Member. Also, within fourteen (14) calendar days after the Court approves the Settlement Agreement, Defendant shall deliver to Class Counsel the individual Settlement Awards agreed to by the Parties to each Settlement Class, checks for Class Counsel's attorneys' fees and costs, and a check for the Named Plaintiff's Service Award.

Within fourteen (14) calendar days after receiving the Settlement Class Members' contact information, Class Counsel shall mail the Court approved Settlement Notice to all Settlement Class Members along with each Settlement Class Member's individual Settlement Award checks.  The Settlement Award checks shall be valid and negotiable for a period of one hundred and eighty (180) days (the "180-Day Period").

## IV.    Release.

Named Plaintiff Martin and each Settlement Class Member who cashes and/or deposits their *pro rata* Settlement Award under the Settlement will release Defendant and all Releasees from any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the threatened action based on allegations of unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under the FLSA, along with any state law wage and hour claims (including, but not limited to, M.G.L. c. 149, § 1, et. seq., M.G.L. c. 151, § 1, *et. seq.*, and

M.G.L. c. 136, *et. seq.*), in accordance with the respective Class Period, in weeks when the individual worked for any Releasee. The Settlement Class Members shall be advised of the same in the Settlement Notice.

### V.    Allocation Formula.

Settlement Class Members will be eligible to receive their *pro rata* share of the Net Settlement Amount. Each Settlement Award shall be determined pursuant to an allocation formula based on the time each Settlement Class Members worked for Defendant, their rate of pay, and the number of days they worked each week during the relevant period. All Settlement Award determinations shall be based on Defendant's payroll and timekeeping records.

### VI.    Service Award.

The Settlement Agreement provides that, subject to Court approval, Plaintiff Martin will receive a $2,500 Service Award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective as well as the risks took to do so. Martin assisted Class Counsel in the investigation of the claims at issue in the Lawsuit, produced documents to support the claims, and helped achieve this Settlement, including by providing detailed accounts of his work experience, hours worked, and the Defendant's practices and procedures.

### VII.    Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Class Counsel will receive $25,000 as attorneys' fees (approximately 33% of the Gross Settlement) plus reimbursement of costs in an amount not to exceed $10,000, which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter and the continued work obtaining the approval of this Settlement Agreement and administering the same.

## ARGUMENT

### I.    A One-Step Approval Process Is Standard for FLSA Settlements.

Throughout the Country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").[1] This is because collective actions under 29 U.S.C. § 216(b) of the FLSA ("Section 216(b)") do not implicate the same due process concerns as Rule 23 class actions since there are no absent class members. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 00192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Cunha v. Avis Budget Car Rental, LLC*, No. 16 Civ. 10545, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016) (internal quotation marks omitted); *Pike v. New Generation Donuts, LLC*, No. 12 Civ. 12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016) (same); *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who

---

[1] *See Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Castillo v. Noodles & Co.*, No. 16 Civ. 03036 (N.D. Ill. Dec. 23, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements.); *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 15 Civ. 10447 (N.D. Ill. Nov. 29, 2016) (same); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); *Watson v. BMO Fin. Corp.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016); *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011).

affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579- 80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions). Where, as in this matter, individuals are not part of the settlement unless they execute their pro rata settlement check, there is no need to require that the settlement provide for opt-outs or objections. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011) ("The central difference between collective certification under the FLSA and under Rule 23 is the FLSA's requirement that those interested in joining the putative class opt in, while Rule 23 certification requires the uninterested to opt out.") (citing *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003)).

Here, Plaintiff amended his Complaint to remove allegations concerning violations of Massachusetts wage-and-hour laws and to assert only violations of the FLSA. *See* Doc. 20. Settlement Class Members will each receive a Settlement Award check with their *pro-rata* portion of the Net Settlement Amount, and they have the option to execute the Settlement Award check confirming their approval of the Settlement and consenting to become a party to the Lawsuit for purposes of the Settlement.  If a Settlement Class Member does not execute and cash his/her Settlement Award check, then they will not be considered a Settlement Class Member, will not release any claims that they may have against Defendant, and will have the option to bring a separate action.

## II.    The "Cash the Check" Settlement Opt-in Procedure is Common Practice.

Under the Parties' Settlement Agreement, Settlement Class Members who negotiate or deposit

the Settlement Award checks are consenting to join the FLSA collective action and will compromise their rights to separately sue Defendant for overtime pay under the FLSA. Allowing Settlement Class Members to participate in the Settlement by the act of negotiating a settlement check ensures the most comprehensive relief for the Settlement Class Members, because they are not required to fill in and return a written consent form.

As shown below, "cashing-of-the-check" FLSA opt-in procedures like those proposed here are commonly approved by federal courts throughout the country (including in this District) as a method of requiring affirmative steps to participate in the FLSA collective. This method allows maximum participation by reducing the burden to participate. For example:

- *Klapatch v. BHI Energy I Power Servs., LLC*, Civ. A. No. 18-11581-RGS, ECF No. 61(D. Mass. Sept. 5, 2019) – approving settlement where potential class members opted-in to the FLSA class and settlement by cashing the settlement check.

- *Leverage v. Traeger Pellet Grills, LLC*, No. 16-cv-00784-KAW, 2017 WL 6405619, at *3 (N.D. Cal. Dec. 15, 2017) – granting final approval of a class and collective action settlement involving a cashing of the check opt-in procedure. The settlement provided that "Cashing the settlement check will be deemed an opt-in for purposes of settling and releasing FLSA claim." Those who did not cash checks did not waive their FLSA-related claims.

- *Aguirre v. DirecTV, LLC*, Case No. CV 16-06836 SJO-JPR, 2017 WL 6888493 (C.D. Cal. Oct. 6, 2017) – granting final approval of a class and collective action settlement involving a cashing of the check FLSA opt-in procedure. *Id.* at *14. The settlement provided that only those participants who cashed FLSA settlement payments would "be deemed to have consented to and opted into the Action for the purposes of the FLSA," and to have released their FLSA claims. *Id.*, ECF 38-2, pdf. p. 21 of 57, ¶ 26 (Joint Stipulation of Class Action Settlement and Release); *id.*, ECF 52, pdf. p. 17 of 24 (Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement).

- *Furman v. At Home Stores, LLC.*, No. 1:16-cv-08190, Doc. 30 (N.D. Ill. May 1, 2017), granting final approval of FLSA collective action settlement involving cashing of the check FLSA opt-in procedure, where the back of each settlement check stated "By cashing this check, I agree to join the case [], and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement." *Id.* at *3-4; *see also Furman*, No. 1:16-cv-08190, Doc. 28-1 at *11.

- *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *1 (M.D.N.C. Mar. 17, 2017)(conditionally certifying FLSA settlement class of "Any and

all non-managerial employees employed by Integrity to work in Durham Public Schools pursuant to a contract between Durham Public Schools and SSC Service Solutions, Inc. ("Service Solutions") who worked overtime between September 16, 2012, and November 5, 2014, and who sign or negotiate the settlement checks distributed pursuant to the Settlement Agreement."

- *Sarkisov v. StoneMor Partners L.P.*, No. 13-cv-04834-JD, 2015 WL 5769621 (N.D. Cal. Sept. 30, 2015) – noting the advantage of the cashing of the check opt-in process, in granting final approval of an FLSA collective and class action, stating, "Significantly, the class members do not have to submit claim forms in order to receive a settlement check." *Id.* at *2.

- *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-cv-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) – granting preliminary approval of FLSA class and collective action settlement and approving use of cashing of the check method where the settlement agreement stated "[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."

- *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2, 6, n.4 (S.D.N.Y. Oct. 7, 2014) – granting final approval of cashing of the check FLSA settlement.

- *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at **2, 14 (S.D.N.Y. Mar. 25, 2014) – approving FLSA class and collective action and the cashing check opt in procedure for FLSA collective action members who endorse their settlement checks.

- *Edelen v. Am. Residential Servs.*, Civ. A. No. DKC-11-2744, 2013 WL 3816986, at *2 (D. Md. July 22, 2013) – granting final approval for FLSA settlement opt-in procedure where the agreement provided "members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their FLSA claims (including any claims for liquidated damages) arising out of Defendants' purported failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011."

- *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *2-3, 9 (N.D. Cal. July 11, 2013) – granting final approval of cashing of the check FLSA settlement procedure where "Class Members opt in to the FLSA Class, and release their claims under the FLSA, by cashing their settlement checks. In other words, and as described in the Notice sent to Class Members, members of the Settlement Classes were not required to submit a claim form in order to receive a settlement payment under the Settlement, and they will not waive their claims under the FLSA unless they cash their checks."

- *Caballero v. Zaloumis Contracting Serv., Inc.*, No. 11 Civ. 1121 (DAB), 2013 WL 646656, at *1 (S.D.N.Y. Feb. 20, 2013) – approving the use of the cash the check method of opting into an FLSA settlement and noting the settlement class would consist of those "who previously submitted consents to join or who endorse their settlement checks."

- *Franco v. Ruiz Food Prods.*, No. 1:10-cv-023540-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) – granting final approval of the cashing of the check FLSA settlement opt-in procedure;

- *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835(PAE), 2012 WL 4748101, at *2 (S.D.N.Y. Oct. 4, 2012) – approving the cashing of the check method for settlement opt-in where "Upon the effective date of the settlement, each Class Member shall have released all claims as defined in the settlement agreement, *provided,* however, that any member of the class who did not affirmatively opt in to the FLSA class action, and who did not cash his or her settlement check, is not precluded by this settlement from bringing future FLSA claims against defendants arising out of the same events alleged in this action. Under this release, however, a class member who does cash his or her settlement check is precluded from bringing such claims."

- *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *2 (S.D.N.Y. Sept. 16, 2011) – approving the cashing of the check method for settlement opt-in where "Class members who do not opt out and who sign their settlement checks will be deemed also to have provided their written consents to join the FLSA collective and to have released their FLSA claims."

The "cashing-of-the-check" method is "calculated to maximize the collective members' participation in the settlement" and such "efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying off the attorneys and leaving the collective members with a recovery that is only illusory." *Besic v. Byline Bank, Inc.*, No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015). Here, Settlement Class Members who negotiate or deposit the Settlement Award checks sent to them are consenting to join the FLSA collective action portion of this Lawsuit and giving up any rights to separately sue Defendant for overtime pay under the FLSA. Settlement Class Members who do not negotiate or deposit the Settlement Award checks they receive will preserve any rights to separately sue Defendant under the FLSA. This method is fair and aimed at maximizing the broadest possible participation by Settlement Class Members in the Settlement and peace of mind for all parties.

**III.    The Settlement is Fair and Reasonable and Should Be Approved.**

The Court has a duty to determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation marks omitted); *see also Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (S.D.N.Y. 2015) (same). Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Curtis*, 2016 WL 3072247 at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014). If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . we allow the district court to approve the settlement. . . ."); *Curtis,* 2016 WL 3072247, at *2 ("A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions'"); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted); William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The Settlement in this case easily meets the standard for approval. The Settlement was the result of extensive pre- and post-suit investigation, informal discovery, and substantial arm's-length negotiations. *See* Ex. 1; *see also Woolfson v. Caregroup, Inc.*, No. 09 Civ. 11464, 2010 WL 10063268, at *2 (D. Mass. Sept. 13, 2010) (approving FLSA settlement where it was "the result of arms-length negotiations between experienced counsel representing the interests of the plaintiffs and defendant,

after thorough factual and legal investigation"). Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement pending before the Court.

The Settlement amount is fair and appropriate. Here, the Parties seek court approval of a Gross Settlement of $76,000. The Gross Settlement represents 1.57 times the total two-year back wages owed, and the Net Settlement represents approximately 80% of the two-year back wages owed. Ex. 1 at ¶¶ 36-40. Critically, the Net Settlement represents approximately 94% of the total liquidated damages alleged to be owed, the primary damages remaining after Defendant made payments to Plaintiffs following the Massachusetts Attorney General's investigation. *Id.* This is a substantial benefit to Plaintiff and the proposed Settlement Class Members. A trial on the merits would involve significant risks for all Parties involved as to both liability, damages, and costs, including as to whether Defendant acted in good faith in classifying and paying Plaintiffs.

The proposed allocation of the Settlement is also reasonable. It reflects a proportion of damages sought by Plaintiff based on the amounts received and time worked by Plaintiff and the Settlement Class Members and takes into consideration amounts previously paid by Defendant following the Massachusetts Attorney General's investigation. *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) (approving class and collective overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *3, *17 (S.D.N.Y. May 23, 2014) (approving allocation formula based in part on number of workweeks class members were employed during the class period).

The proposed Settlement will provide individual settlement payments to the Settlement Class Members representing a substantial percentage of their remaining damages allegedly owed as calculated by Plaintiff's counsel. Ex. 1 at ¶¶ 36-40. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco*, 95 F. Supp.

2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.,* 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

Under the Settlement, the Gross Settlement represents 1.57 times the total two-year, unliquidated back wages allegedly owed and the Net Settlement represents approximately 80% of the two-year, unliquidated back wages allegedly owed. Critically, the Net Settlement represents approximately 94% of the total liquidated damages alleged to be owed, the primary damages remaining after Defendant made payments to Plaintiff and the Settlement Class Members following the Massachusetts Attorney General's investigation. Ex. 1 at ¶¶ 36-40. The recovery by Plaintiff and the Settlement Class Members is well within the normal range for settlements of this nature which have been approved by courts nationwide. The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-864 (7th Cir. 2014).

## IV.    Notice with Settlement Checks Increases the Fairness of the Settlement.

The aforementioned "cashing-of-the-check" approach for individuals to affirmatively consent to join an FLSA collective action allows maximum participation by reducing the burden to participate. *See* Andrew C. Brunsden, *Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008).

In *Besic*, the court granted final approval of an FLSA collective action settlement involving the same "cashing of the check" opt-in procedure advocated by the parties in this case. 2015 WL 13763028 at *3. In doing so, the court noted the "cashing of the check" opt-in procedure was "calculated to maximize the collective members' participation in the settlement" and found "the efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying of the attorneys and leaving the collective members with a recovery that is only illusory." *See id.* at *2. Here, the total Settlement is fair, reasonable, and adequate. Ex. 1 at ¶ 41. The fact that Defendant is sending checks to all potential class members with the Notice further enhances the equitable nature of the Settlement because it increases participation. *Id.*

## V.    The Service Award to Plaintiff Should Be Approved as Fair and Reasonable.

Plaintiff requests approval of a Service Award of $2,500. The requested Service Award is reasonable given the contributions Plaintiff made to advance the prosecution and resolution of the lawsuit. *Scovil*, 2014 WL 1057079, at *6 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). This is especially true in employment litigation. *See Bozak*, 2014 WL 3778211, at *4 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co- workers.") (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks

omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Poly J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g., In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (noting courts consider, *inter alia*, efforts of the named plaintiff in granting awards). Service awards are commonly awarded to those who serve the class's and collective's interests. *Scovil*, 2014 WL 1057079, at *6.

Courts in this Circuit and others have approved service awards for much greater amounts in employment cases. *See, e.g., Scovil*, 2014 WL 1057079, at *8 (approving $15,000 service awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *see also Dent v. ITC Serv. Grp., Inc.*, No. 12 Civ. 00009, 2013 WL 5437331, at *4, *9 (D. Nev. Sept. 27, 2013) (approving $15,000 award where plaintiff "subjected himself to a substantial, and detrimental, level of notoriety by instituting this lawsuit, assumed a significant financial risk by prosecuting this litigation, and pledged to fully participate in discovery in this case and fully cooperated with Class Counsel in prosecuting this case.") (internal quotation marks omitted).  Here, Plaintiff's actions have resulted in meaningful and appropriate benefit to Settlement Class Members, leading to an overall result which is fair and

reasonable.

## VI. Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

### A. The Court Should Apply the Percentage of the Fund Method.

Plaintiff's request for an award of $25,000 for attorneys' fees (approximately 33% of the Gross Amount) plus up to $10,000 in costs and expenses is reasonable. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). This is "founded on the equitable principle that those who have profited from litigation should share its costs." *Id.* at 305 n.6.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims — the lodestar method and the percentage of the fund method, *see In re Thirteen Appeals*, 56 F.3d at 306-07 — courts generally favor awarding fees in common fund cases based upon a percentage of the fund. *Id.* at 307 (noting that "use of the percentage of the fund method in common fund cases is the prevailing praxis").

This is so because employing the percentage of the fund method in common fund cases promotes judicial economy. The percentage of the fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See id.* ("using the [percentage of fund] method in a common fund case enhances efficiency…."); *see also Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model"). Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options." *In re Thirteen Appeals*, 56 F.3d at 307. Moreover, the percentage method preserves

judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Id.* ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation marks and citation omitted).

The "First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) (*citing In re Thirteen Appeals*, 56 F.3d at 307).

**B. Attorneys' Fees are Reasonable in Light of the Settlement.**

Moreover, Class Counsel's request for approximately 33% of the Gross Settlement Amount as attorneys' fees and reimbursement for additional costs and litigation expenses is reasonable in light of the meaningful and appropriate benefit their efforts conferred on the collective. The Settlement Agreement provides that Defendant will issue checks to all Settlement Class Members and the recovery that Settlement Class Members will have the option of accepting is significant given the substantial risk that continued litigation may have yielded little or no recovery at all.

Courts in this District have given weight to the percentage of the claims to be made by class members when determining a reasonable fee award under the percentage of the fund method. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *12 (D. Mass. Sept. 30, 2016). As Judge William J. Young observed in *TJX Companies*, "[t]his approach will not only encourage more realistic settlement negotiations and agreements, but also will drive class counsel to devise ways to improve how class action suits and settlements operate." *Id.* (citing *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008). This is exactly what Class Counsel has accomplished. Courts prefer "a resolution where the attorneys are incentivized to get class members to receive their claims, rather than simply incentivized to get a large settlement pool that will result in a large fee

regardless of what reverts back to the Defendant." *Id.* Linking attorney's fees to claims made will both prevent undeserved windfalls for class counsel, and curb the filing of meritless lawsuits. *See id.* (citing *In re TJX Companies Retail Sec. Breach Litig.*, at 406–07).

In Class Counsel's experience, notice accompanied by checks results in roughly a 90% opt-in rate. Ex. A, at ¶ 41. If the Court is inclined to link the attorneys' fees to claims made, Class Counsel's request is reasonable.

## C. Attorney Fees Amounting to 33% of the Gross Settlement Amount is Reasonable.

Plaintiff's request for attorneys' fees is part of the bargained-for Settlement. In accordance with the governing contingency fee agreement, the Parties agreed that, subject to Court approval, Class Counsel's fees would be 40% of the Gross Settlement Amount, but, consistent with the generally approved percentage of the fund approach in wage and hour cases, Plaintiff's request only $25,000 here—approximately 33% of the Gross Settlement Amount. The size of this Settlement weighs in favor of granting the requested fee award. Courts routinely grant requests for 33% of the common fund in cases with settlement funds similar to or substantially larger than this one.

Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created." *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001); *See Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (Dein, M.J.) (approving one-third of $1.4 million settlement fund in misclassification case ) (settlement approval motion at ECF No. 58); *see also Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving one-third of $3.3 million settlement plus costs and expenses in misclassification case) (settlement approval motion at ECF No. 215); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one-third of $900,000 settlement fund in misclassification case) (final settlement approval motion at ECF No. 106); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims of hourly-paid

workers) (approval motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc., et al.*, No. 11 Civ. 10549 (D. Mass. September 5, 2012) (approving one-third of $5 million settlement fund for wage claims of hourly-paid employees) (approval motion at ECF No. 53); *Cutter v. HealthMarkets, Inc., et al.*, No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in misclassification case) (approval motion at ECF No. 77); *see also Scovil*, 2014 WL 1057079, at *5 (taking judicial notice that a one-third common fund fee "is consistent with wage-and-hour settlements in the . . . jurisdiction of Massachusetts").

"Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, CV 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017); *see In re Neurontin Mktg & Sales Practice Litig.*, No. 04–cv–10981–PBS, 2014 WL 5810625, at *3 (D. Mass. Nov.10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Mazola v. May Dept Stores Co.*, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions."); s*ee also Hall v. Dominion Energy, et al.*, CA 3:18-cv-00321-JAG, Doc. 92 (E.D. Vir., Aug. 22, 2019) (approving 35% attorneys' fees in a straight time for overtime case where collective members were mailed checks with notice); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (In common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"), *cert. denied*, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *In re Xcel Energy, Inc., Securities Litigation,* 364 F.Supp.2d 980 (D.Minn.2005)(courts "frequently award[ ] attorney fees between twenty-five and thirty-six percent of a common fund in ... class actions"); *In re Bayou Sorrell Class Action*, No. 6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (awarding attorney fees of 36%); *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (awarding

40% attorneys' fees); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (James, J.) (approving attorney fees of 40%); *See, e.g., Winingear*, 2014 WL 3500996, at *1 (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Devine v. City of Hampton, Virginia*, No. 4:14CV81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015)(finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable); *see also Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2019 WL 2288441, at *5 (E.D. Va. May 29, 2019) ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)(finding 33.39% percent award is within the range of percentages that have been approved in other cases in the Fourth Circuit); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at *2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees).

Class Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. Further, Defendant does not oppose this request.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an order: (1) approving the Settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release attached hereto as Exhibit B; (2) approving a Service Award of $2,500.00 to Named Plaintiff Martin; (3) approving Plaintiff's requested attorney's fees of $25,000 and additional costs and litigation expenses up to $10,000; (4) incorporating the terms of the Settlement Agreement; (5) dismissing this case with prejudice.

Respectfully submitted,

By: _/s/ Olivia R. Beale_
  Michael A. Josephson (*Pro Hac Vice*)
  Texas Bar No. 24014780
  Olivia R. Beale
  Texas Bar No. 24122166 (*Pro Hac Vice*)
  **JOSEPHSON DUNLAP, LLP**
  11 Greenway Plaza, Suite 3050
  Houston, Texas 77046
  713-352-1100 – Telephone
  713-352-3300 – Facsimile
  mjosephson@mybackwages.com
  obeale@mybackwages.com

  Richard J. (Rex) Burch
  Texas Bar No. 24001807
  **BRUCKNER BURCH, PLLC**
  11 Greenway Plaza, Suite 3025
  Houston, Texas 77046
  713-877-8788 – Telephone
  713-877-8065 – Facsimile
  rburch@brucknerburch.com

  **AND**

  Philip J. Gordon
  **GORDON LAW GROUP**
  585 Boylston Street
  Boston, MA 02116
  Telephone: 617-536-1800
  Facsimile: 617-536-1802

  **ATTORNEYS IN CHARGE FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendant regarding this motion and the relief requested herein. Counsel stated that Defendant is unopposed to this motion.

/s/ Olivia R. Beale
**Olivia R. Beale**

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Olivia R. Beale
**Olivia R. Beale**